UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Joseph and Barbara Starkey,  : Case No. 1:13-cv-694
    Plaintiffs, :
vs. :
JP Morgan Chase Bank, N.A., :
    Defendant. :

## ORDER

Before the Court is Defendant's motion to dismiss Plaintiffs' complaint pursuant to Fed. R. Civ. Proc. 12(b)(6). (Doc. 6) Plaintiffs oppose the motion (Doc. 7), and Defendant has filed a reply. (Doc. 8) For the following reasons, the Court will grant Defendant's motion.

## FACTUAL BACKGROUND

Joseph and Barbara Starkey filed a complaint in this Court on September 26, 2013, alleging several federal and state claims against JP Morgan Chase Bank, N.A. ("Chase"). According to their complaint, the Starkeys obtained a mortgage from Bank One, N.A., in 1999 for their property at 7970 Pippin Road in Cincinnati. Sometime thereafter, Chase bought Bank One, and in 2008 the two banks merged.

Plaintiffs filed a Chapter 13 bankruptcy petition on September 5, 2001, and they were discharged from that proceeding on February 27, 2004. During the bankruptcy proceeding, their lawyer discovered that the Bank One mortgage had never been recorded in Hamilton County. They disclosed this fact to the bankruptcy court, and their Chapter 13 confirmed plan included payments to Bank One as a general unsecured

creditor. They believe and allege that Bank One was paid $45,000 between 2001 and 2004 through their Trustee's disbursements.

After their Chapter 13 discharge, Plaintiffs sought and received a new mortgage and promissory note covering the Pippin Road property with Integrity Funding Corporation. This mortgage in the amount of $91,000 was executed in August 2004, and was recorded in Hamilton County's records. Chase filed a notice of assignment of that mortgage in September 2004, and Plaintiffs aver that Chase has held the interest in that mortgage from that date to the present. Plaintiffs filed another Chapter 13 bankruptcy petition in June 2007, and were discharged from that case in June 2012. The Chase mortgage was disclosed on Schedule D of their petition and no arrearage on that mortgage was scheduled in their plan. They believe and allege that Chase did not file a proof of claim in their case in order to assert any arrearage.

Chase sent a letter to Plaintiffs dated September 13, 2012, which stated at the top (in bold letters): "WE ARE CANCELLING THE REMAINING AMOUNT YOU OWE CHASE!" (Doc. 1, Ex. C) The letter said that Chase was cancelling the balance due on the Plaintiffs' mortgage (account number ending in 2037) "as a result of a recent mortgage servicing settlement reached with the states and federal government. **This means you will owe nothing more on the loan and your debt will be cancelled. You don't need to sign or return anything for this to happen.**" (Id; emphasis in original) Plaintiffs called Chase about the letter; they allege "upon information and belief" that they were told it pertained to their 2004 mortgage, originally entered into with Integrity Funding and then assigned to Chase. They stopped making payments on that

mortgage as a result of the letter. Sometime in early 2013, Plaintiffs began receiving delinquent payment notices from Chase. They allege that one of these notices is attached as Exhibit D to the complaint. Exhibit D is an Annual Escrow Account Disclosure statement dated August 6, 2013 that pertained to the Starkeys' loan number ending in 5399 (a different number than the number on the September 2012 letter). The statement informed Plaintiffs that their escrow balance for that account was insufficient, and offered them three options to satisfy the escrow shortage (pay all of it in one lump sum; pay part now and divide the rest among subsequent mortgage payments; or pay nothing now and divide the arrearage among the next 12 mortgage payments).

Plaintiffs then began researching the National Mortgage Settlement. They sent an email to the Ohio Attorney General's Office and a letter to Chase in April 2013 "in response to the inconsistencies with the mortgage release and the account statements." (Compl. ¶ 20) According to the complaint, Chase responded in a letter on April 17, 2013 that (1) Chase had released the 1999 mortgage; (2) Chase asserted its right to continue to collect payments on the 2004 mortgage; and (3) Chase sent Plaintiffs the account history for the 1999 mortgage. (Id., ¶21) That account history is attached to the complaint as Exhibit E, and its last entry is in 2005. Not satisfied with Chase's response, Plaintiffs filed an online complaint with the federal Consumer Financial Protection Bureau on or about May 22, 2013. They allege that Chase responded to the CFPB inquiry on or about June 17, 2013 in a manner substantially similar to Chase's April 17, 2013 letter to Plaintiffs. Chase also provided a copy of the 2004 note and mortgage.

Plaintiffs allege that they continued to dispute Chase's assertion because the

1999 loan was never recorded and Bank One was treated as an unsecured creditor. They allege that the only loan they had with Chase in 2012 was the 2004 mortgage. They further allege that they are concerned that they are going to lose their home because they do not know what Chase is trying to collect, and because they sincerely believe that Chase intended to release the 2004 mortgage. (Compl. ¶¶ 24-26)

Plaintiffs allege five claims against Chase arising from these allegations. Count One is a claim under the Real Estate Settlement Procedures Act ("RESPA"), alleging a dispute about the validity of Chase's responses to their inquiries concerning the mortgage. Their second claim for relief asserts that Chase violated the Making Home Affordable Program ("HAMP") and the National Mortgage Settlement. Their third claim alleges common law fraud, and the fourth claim alleges conversion and unjust enrichment. Their fifth claim is an action to quiet title to their property, pursuant to Ohio Rev. Code 5303.01.

Chase moves to dismiss all of Plaintiffs' claims, contending that the allegations of the complaint fail to state a plausible claim for relief on any of the grounds raised.

## ANALYSIS

Standard of Review

In reviewing a motion to dismiss under Rule 12(b)(6), the Court accepts the complaint's well-pleaded factual allegations. A claim will survive if those allegations are "enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Jones v. City of Cincinnati, 521 F.3d 555, 559 (6th Cir. 2008), citing Bell Atlantic Corp. v. Twombly, 550 U.S.544 (2007). Twombly essentially retired Rule 8's permissive "no-set-of-facts" pleading standard set forth in

-4-

Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The Twombly court found that literal application of that standard impermissibly permits wholly conclusory claims to survive Rule 12 challenges. And in Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court expressly held that a complaint will survive a Rule 12 challenge only if its well-pleaded factual allegations are sufficient to state a claim for relief that is plausible on its face. Facial plausibility requires pleading facts that permit a reasonable inference that the defendant is liable for the alleged misconduct. If a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id. at 678 (quoting Twombly, 550 U.S. at 557).

Federal Statutory Claims

      RESPA: The Sixth Circuit has noted that Congressional intent in adopting RESPA was "to insure that consumers throughout the nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country." Marais v. Chase Home Finance LLC, — F.3d —, 2013 Fed. App. 0332P (6th Cir., Nov. 26, 2013)(internal citations omitted). As pertinent here, RESPA requires a mortgage servicer to promptly respond to a borrower's "qualified written request" for information about the borrower's account and any charges thereto. 12 U.S.C. § 2605(e)(1)(B) defines a "qualified written request" as "... a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that (I) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a

statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." Prior to recent statutory amendments, the lender/servicer must acknowledge receipt of a QWR within ten days, and must specifically respond within 60 days, pursuant to Section 2605(e)(2). A failure to comply with the statute's requirements renders the servicer liable for actual damages to the borrower; if there is a pattern or practice of noncompliance, additional damages may be awarded up to $1,000.[1]

Chase contends that Plaintiffs' complaint fails to establish that they sent a "qualified written request" to Chase. It cites several cases finding that a plaintiff must affirmatively plead facts showing that the written request satisfied the statutory requirements. See, e.g., Hurd v. BAC Home Loans Servicing, LP, 800 F.Supp.2d 747 (N.D. Texas 2012), where the plaintiff alleged that she sent a letter "... requesting documents, disputing the amount of the alleged debt, and requesting confirmation that Defendant was a holder in due course of a wet ink original promissory note and deed of trust ...". The district court found that her allegations did not plausibly show that her letter was a "qualified written request" to her lender.

Here, Plaintiffs' complaint alleges that they sent "a letter to [Chase] on or about April 7, 2013 in response to the inconsistencies with the mortgage release and the account statements." And they allege that Chase responded to them on April 17, 2013,

---

[1] The amendments shorten the acknowledgment time to five days from ten, the response time from 60 days to 30 days, and the additional damages limit increases from $1,000 to $2,000.

-6-

providing information about their account history and how it treated their 1999 and 2004 mortgages. (Compl. ¶¶ 20-21) While the complaint does not explicitly allege that Plaintiffs sent a "written communication" that "explained their belief" that their account was in error, their allegations that they sent a letter questioning their account, and that Chase responded with specific information about their account, is sufficient to satisfy those statutory requirements.

Chase further argues that even if Plaintiffs sent a proper QWR, Chase did not violate RESPA when it explained its position regarding Plaintiffs' account. Plaintiffs allege that they were "not satisfied" with Chase's response because they disagree with Chase's substantive position regarding the mortgage release letter. RESPA section 2605(e)(2)(B)(i) requires servicers to timely respond to borrowers' inquiries, and to provide "a statement of the reasons for which the servicer believes the account of the borrower is correct." It does not impose any other substantive duties. Chase cites Vassalotti v. Wells Fargo Bank, N.A., 732 F.Supp.2d 503, 509 (E.D. Pa. 2010), where the district court dismissed a RESPA claim because the servicer had responded to the borrower's QWR and explained the reasons for its treatment of her loan. The district court noted: "A reasonable explanation of the servicer's belief is sufficient, even if it is later determined that the belief is erroneous." Id. at 509.

Plaintiffs expressly concede that Chase responded to their written requests for information, but they "dispute the validity of these responses." (Compl. ¶ 28) RESPA does not impose a substantive duty on the servicer to correct Plaintiffs' account when the servicer has explained its reasonable belief that its position is correct. Plaintiffs' allegations simply do not plausibly allege a claim arising under RESPA. Plaintiffs' first

claim for relief is therefore dismissed.

HAMP: In their second claim for relief, Plaintiffs allege that Chase violated HAMP and the National Mortgage Settlement. Chase argues that there is no private right of action under HAMP. The National Mortgage Settlement was a consent decree entered into between the United States and five mortgage servicers; see United States v. Bank of America, N.A., et al, Case No. 12-CV-0361 (D.D.C., April 5, 2012). Plaintiffs were not a party to the decree, and cannot bring a claim to enforce it much less to collect any damages as a result of any alleged breach.

Plaintiffs concede that case law almost uniformly holds that there is no private right of action under HAMP. They urge this Court to consider Wigod v. Wells Fargo Bank, N.A., 673 F.3d 547 (7th Cir. 2012), and Corvello v. Wells Fargo Bank, N.A., 728 F.3d 878 (9th Cir. 2013). The Court has reviewed both cases, and neither of them find that HAMP gives rise to a private cause of action, as Plaintiffs suggest. In Wigod, the Seventh Circuit specifically stated that "HAMP and its enabling statute do not contain a federal right of action." Id. at 555. The issue was whether plaintiff's state law claims for breach of contract and promissory estoppel arising out of a loan modification offered to her by Wells Fargo pursuant to the HAMP program were preempted by federal law; the court of appeals found they were not. Similarly, in Corvello, plaintiff alleged state law claims arising from a HAMP loan modification, and not a free-standing claim under HAMP.

Plaintiffs suggest in their response brief that there "could be a plausible" claim under the National Mortgage Settlement, although they cite no authority for such speculation. Chase cites Habib v. Bank of America, N.A., 2013 U.S. Dist LEXIS 98168

(E.D. Mich., July 15, 2013), where the district court dismissed plaintiffs' claim for specific performance of the National Mortgage Settlement, because they were not parties to that decree and could not bring an enforcement action as a third-party beneficiary. This Court concurs with the district court's cogent analysis in that case. Plaintiffs' claims under HAMP and the National Mortgage Settlement are dismissed.

Common Law Fraud

In their third claim for relief, Plaintiffs allege that Chase knowingly defrauded them by failing to properly respond to their QWRs, by providing a false account history for the 1999 mortgage, by sending the September 2012 mortgage release letter concerning the "wrong obligation," by failing to properly respond to the CFPB, and by "engaging in a pattern in misstating and misrepresenting the status of the 2004 mortgage." (Compl. ¶ 42)

The elements of a common law fraud claim in Ohio are: (1) a representation of fact, or concealment when a duty to disclose exists, (2) that is material, (3) that is false and made with knowledge of its falsity, or made with such disregard for its truth that knowledge of the falsity is inferred, (4) that is made with intent to mislead, (5) that induces justifiable reliance on the representation, and (6) that proximately causes damages. See, e.g., Gaines v. Preterm-Cleveland, Inc., 33 Ohio St.3d 54, 55, 514 N.E.2d 709 (1987). Fed. R. Civ. Proc. 9(b) requires plaintiffs to plead the circumstances of the fraud with particularity; at a minimum they must plead the time, place and content of the alleged misrepresentation, the defendant's fraudulent intent, and the resulting injury.

Chase first argues that Plaintiffs have not alleged an actionable

-9-

misrepresentation of **fact**. At best, Plaintiffs allege that Chase failed to respond to their complaints or improperly characterized the status of their 2004 mortgage. Plaintiffs respond that the factual misrepresentations are contained in "the CFPB letters, account histories, and September 2012 letters." It is not enough to cite a document or a letter; Plaintiffs do not identify any facts that they allege were misrepresented. Plaintiffs clearly disagree with Chase's position about which mortgage loan the September 2012 mortgage release letter pertained to, but that is not sufficient to allege a factual misrepresentation.

Chase further contends that Plaintiffs have not plausibly alleged detrimental reliance on any fraudulent misrepresentation. Plaintiffs allege that they relied on Chase's September 13, 2013 letter and stopped making payments on their 2004 mortgage, but ceasing loan payments is not a detriment. Plaintiffs suggest in their response brief that they have pled detrimental reliance because they may have paid twice on their mortgage, or because they believed that Chase released their 2004 loan. Plaintiffs clearly disagree with Chase's explanation that its 2012 letter released the 1999 mortgage; but that disagreement does not amount to a plausible allegation of detrimental reliance for purposes of pleading fraud. See, e.g., Evans v. Pearson Enters., 434 F.3d 839 (6th Cir. 2006), affirming the dismissal of plaintiff's fraud claim and noting: "Conclusory statements of reliance are not sufficient to explain with particularity how [plaintiff] detrimentally relied on the alleged fraud ...". Id. at 852-853 (internal citation omitted).

Plaintiffs' allegations fail to satisfy the particularity requirements of Rule 9(b). At best, they have pled a disagreement with Chase's position concerning the mortgage

release letter.  The well-pled factual allegations do not support a plausible claim that Chase engaged in a scheme of intentional fraud.  Plaintiff's common law fraud claim is therefore dismissed.

Conversion and Unjust Enrichment

Plaintiffs' fourth claim alleges that they made payments to Bank One as a general unsecured creditor from 1999 through 2005.  In 2012, Chase provided them an account history of that 1999 mortgage in response to their QWR.  Plaintiffs allege that by accepting the payments on a discharged debt, "Bank One converted Plaintiffs' funds.  By admitting the existence of this mortgage note in September 2012 through the mortgage release, Chase is also admitting the existence of the collection of a discharged debt and the misappropriation of Plaintiffs' funds."  (Compl. ¶¶ 47-48) They also allege that Chase was unjustly enriched because it "applied funds and failed to provide a full and accurate account history."  (Id. at 49)

Ohio law provides a four-year statute of limitations for actions not arising from contract, including conversion and unjust enrichment.  An action for "wrongful taking of personal property" does not accrue "until the wrongdoer is discovered[.]"  Ohio Rev. Code 2305.09(B).  The discovery rule applies to the discovery of facts or of injury.  Lynch v. Dial Finance Co., 101 Ohio App.3d 742, 747 (Ohio App. 1995).  Plaintiffs specifically allege that they knew the Bank One mortgage was not recorded, and that **they made payments** to Bank One until 2005.  All of those facts must have been known to them at least by 2005, and their allegation that they first discovered the payments in 2012 is simply nonsensical.   Any claim for conversion of these funds is clearly time-barred.  The same is true with respect to any unjust enrichment claim

-11-

against Chase that arises from Plaintiffs' payments to Bank One.

Moreover, as Chase's motion argues, conversion is the "wrongful exercise of dominion over property in exclusion of the right of the owner, or withholding it from his possession under a claim inconsistent with his rights. ... In this state, an action for conversion of money will only lie if identification is possible and there is an obligation to deliver the specific money in question ..." Haul Transp. v. Morgan, 1995 Ohio App. LEXIS 2240, *9 (Ohio App. 2d Dist. 1995)(internal citations omitted). Even if these common law claims were not clearly time-barred, Plaintiffs' allegations are an insufficient basis upon which they might be entitled to relief. The fourth claim for relief is therefore dismissed.

Quiet Title Action

Plaintiffs allege for the fifth cause of action a claim under Ohio Revised Code 5303.01, to "quiet title" to their property. They seek an order from this Court releasing Chase's mortgage lien, based upon what they allege is Chase's "pattern" of "misstating" their accounts. (Compl. ¶¶ 53-55) Chase contends that a quiet title action cannot be brought in order to challenge mortgage liens absent a plausible basis to believe that the mortgage itself is legally invalid. See, e.g., Bank of N.Y. Mellon Trust Co., N.A. v. Unger, 2012-Ohio-1950 (Ohio 8th Dist. App. 2012), where plaintiff was assigned a mortgage and subsequently filed a foreclosure suit against the defendants. Defendants counterclaimed that the mortgage assignment was invalid, and brought a quiet title action seeking to declare the mortgage itself invalid. Plaintiff's foreclosure suit was dismissed, and the court of appeals affirmed the trial court's summary judgment against the defendants on the counterclaim. The court held that the defendant-borrowers

lacked standing to challenge the assignment, as they were not parties to it and the assignment did not affect their obligations under their mortgage. The court affirmed dismissal of their quiet title claim because the mortgage itself was simply a lien on the property, and put other lienholders on notice of that interest. The mortgage was not a "cloud" on the borrowers' title, and they were not entitled to an order to "quiet title" on the property with respect to the mortgage.

In response to these arguments, Plaintiffs accuse Chase of attempting to distort the facts alleged in their complaint. They assert that their claim arises in equity, based on the improper collection of the 1999 debt and their own belief that Chase intended to release their 2004 mortgage. This response does not suggest in any way that the 2004 mortgage and note, which Plaintiffs admit they sought and freely executed (see Compl. ¶ 12), is legally invalid. Chase also notes that Plaintiffs are not entitled to discharge of that mortgage simply because Plaintiffs believed that Chase's 2012 letter applied to that mortgage. Plaintiffs' fifth claim for relief is therefore dismissed.

## CONCLUSION

For all of the foregoing reasons, Defendant's motion to dismiss Plaintiffs' complaint and each cause of action contained therein, is GRANTED. Plaintiffs' complaint is dismissed with prejudice.

SO ORDERED.

THIS CASE IS CLOSED.

DATED: December 18, 2013                s/Sandra S. Beckwith
                                        Sandra S. Beckwith, Senior Judge
                                        United States District Court